UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:17-cr-00213-GEB |
|---|---|
| Plaintiff, | |
| v. | **RULING ON OBJECTION TO DOWNWARD DEPARTURE RECOMMENDATION IN THE PRESENTENCE REPORT** |
| RAHIM MAHBOOB, | |
| Defendant. | |

The United States objects to the following downward departure recommendation in the Presentence Report ("PSR"):

> [Defendant] has a long history of congestive heart failure, including three heart attacks and quadruple bypass surgery. He has received numerous medical treatments and interventions; however, his health continues to deteriorate, including three heart-related hospitalizations and heart surgery within the last year. He is under the care of two cardiologists, he is taking numerous prescribed medications with varying side effects, and his compromised health requires medical equipment. Under USSG § 5H1.4, the defendant's fragile health and ongoing treatment can be considered as a downward departure to obtain a reasonable sentence. While the Bureau of Prisons has medical facilities equipped to care for defendants in poor health, the United States Sentencing Commission has stated home detention may be as efficient as, and less costly than, imprisonment for those defendants with serious health issues.

PSR at 20, ECF No. 32.

The United States argues:

1

> [Defendant] has not shown that his health issues are so dire that he cannot serve a prison term. The Bureau of Prisons is well-suited to ensure those incarcerated have their medical needs met. Mahboob has also failed to show how the Bureau of Prisons would [be] unable to provide him with the care and monitoring he needs. Mahboob is not the first person with health issues or advanced age to be subject to imprisonment. His needs here are not mitigation for a sentence of anything less than the advisory range.

Gov't's Formal Obj. to PSR at 2:1-11 (internal citation omitted), ECF No. 34.

Defendant supports the downward departure recommendation, contending in his sentencing memorandum: that "imprisonment imposes a substantial risk [to his] life [and his] health can only be described as extraordinarily poor," since "[i]n addition to his numerous heart conditions, [he] also suffers from chronic kidney disease, high blood pressure, and diabetes." Def.'s Sentencing Mem. at 2:13-14, 2:24-26, ECF No. 33. Defendant relies primarily on one his cardiologists in support of his position, arguing:

> [His] cardiologist, Dr. Shamji submitted a letter on his behalf indicating Mr. Mahboob's heart function was declining and stat[ing] his "health is tenuous [and] . . . incarceration would almost certainly lead to a progressive decline." [Dr. Shamji] strongly advocated against incarceration because it could lead to "premature mortality as well as poor quality of life."

Id. at 2:27-3:3.

Under U.S.S.G. § 5H1.4 "[a]n extraordinary physical impairment may be a reason to depart downward . . . in the case of a seriously infirm defendant, [and when] home detention may be as efficient as, and less costly than, imprisonment." Defendant

2

has not shown that he has physical ailments that cannot adequately be cared for by the Federal Bureau of Prisons ("BOP"). Dr. Shamji's contrary opinion is not credited because Defendant has not evinced that Dr. Shamji has knowledge about available medical care for inmates in a federal prison. "[N]o matter how good experts' credentials may be, they are not permitted to speculate." Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 671 (6th Cir. 2010) (internal quotations omitted).

It is evident that the premise of Defendant's downward departure argument is that he has heart and other physical conditions for which "the BOP could not or would not provide [the required] care." United States v. Cutler, 520 F.3d 136, 175 (2d Cir. 2008). Similar conclusory assertions were found unpersuasive in United States v. Cutler, based in part on the following evidence in the case:

> [T]he government submitted the BOP Health Systems Administrator's statement that the inmates housed and cared for by the BOP include 18,877 with hypertension, 4,016 with hyperlipidemia, 1,926 with carotid artery disease, 4,000 with cardiac disease, 3,465 with arteriosclerotic heart disease, 2,100 with cardiac arrhythmia, and 1,121 with congestive heart failure[; and] the government presented evidence that the BOP has contracts with major medical centers that offer the BOP a wide range of trained surgical specialists, and that each prison has procedures in place to provide both routine care and timely emergency transportation to one of the local medical centers.

520 F.3d at 172 (internal quotations and citations omitted)

The United States argues in the present case that it "understands that the defendant has serious medical issues, and he has provided letters from his physicians indicating as much.

3

However, the [BOP] is well-suited to ensure those incarcerated have their medical needs met." Gov't's Sentencing Mem. at 2:23–25, ECF No. 36. The United States supports its position citing the following section in the Legal Resource Guide for the BOP:

> In making a determination regarding the appropriate institution in which to house an offender, the BOP carefully considers the offender's health status. As the BOP provides extensive medical services, a defendant's medical condition generally will not preclude a sentence to BOP custody. When serious health concerns are an issue in a designation decision, the [Designation and Sentence Computation Center] will refer the case to the BOP's Office of Medical Designations and Transportation [. . .]. A specific institution is designated with attention to the urgency of medical need; institution capability; current bed space availability; and security concerns. BOP facilities are classified by the intensity level of health care resources.

Id. at 2:27–3:4, (quoting Dep't of Justice, Fed. Bureau of Prisons, Legal Resource Guide to the Federal Bureau of Prisons 2014 25 (2014), https://www.bop.gov/resources/pdfs/legal_guide.pdf)).

Although it is recognized "that [a] defendant with a multitude of health problems may qualify for a downward departure under § 5H1.4 . . . . [if sufficient evidence is presented to persuade a judge to exercise departure authority, here the sentencing record does not contain evidence sufficient to] make [such] required [departure] findings." United States v. Bostic, 371 F.3d 865, 875(6th Cir. 2004) (internal quotations and citation omitted). Further, Defendant has not shown that placing him on probation, a condition of which would be home detention, is "as efficient as . . . imprisonment." U.S.S.G. § 5H1.4.

Defendant "did not make any specific arguments or present any evidence in his sentencing memorandum or [otherwise] regarding the efficiencies and costs of home confinement." United States v. Hohn, 443 Fed. App'x. 931, 933 (6th Cir. 2011). Nor is such evidence in the PSR.

Therefore, the downward departure recommendation under § 5H1.4 in the PSR is not adopted.

This ruling "must [be] append[ed to] . . . any copy of the presentence report made available to the Bureau of Prisons." Fed. R. Crim. P. 32(i)(3)(C). The Probation Department shall be included in the service of this order.

Dated: March 4, 2019

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge